UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-349-GWU

DAVID K. LEWIS,                                                              PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

## INTRODUCTION

David Lewis appeals from the negative administrative decision on his application for Childhood Insurance Benefits (CIB) and the termination of his Child's Supplemental Security Income (SSI).[1]  The case is before the Court on cross-motions for Summary judgment.

## CHILD'S DISABILITY INSURANCE

An individual who becomes disabled as defined by 42 U.S.C. Section 423(d) before attaining the age of twenty-two, who is the dependent child of a person entitled to old age or disability insurance benefits or fully insured at the time of his/her death, and who is unmarried at the time of application, is entitled to CIB.  42 U.S.C. Section 402(d)(1).

---

[1]Lewis was awarded Child's SSI on a July, 1998 application.  (Tr. 15).  Upon turning 18 years-old, the plaintiff was required to undergo review of his disability status with the adult disability standards being applied.  A cessation medical improvement standard did not apply under these circumstances.  (Tr. 15).

1

06-349  Lewis

CIB benefits employ the same disability standards as are used to determine

disability in adults.  42 U.S.C. Section 423(d).

## ADULT'S SUPPLEMENTAL SECURITY INCOME

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.      Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 CFR 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  See 20 CFR 404.1520©), 404,1521, 416.920©), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?   If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 CFR 404.1520(e), 416.920(e).

2

> 7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on

3

06-349   Lewis

the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 CFR Section 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.

4

06-349   Lewis

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

5

06-349   Lewis

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 CFR 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . .

6

manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services,

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Lewis, a 21 year-old man with a high school education and no past relevant work history, suffered from impairments related to borderline intelligence/mild mental retardation.  (Tr. 20-21).  Despite the plaintiff's impairments, the ALJ determined that he retained the residual functional capacity to perform work at all exertional levels.  (Tr. 21).  Based upon application of Rule 204.00, the ALJ determined that a significant number of jobs

would be available to the claimant and he could not be considered totally disabled. (Tr. 21-22).

After review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed.  Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The ALJ properly determined that Lewis did not meet the requirements of Section 12.05©) of the Listing of Impairments concerning mental impairments.  This Listing requires a claimant to produce:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;

20 C.F.R. Part 404, Subpart P, App. 1, Section 12.05©).  The regulations further provide that: "Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.  20 C.F.R. Part 404, Subpart P, App. 1, Section 12.05.  Thus, to satisfy the requirements of Section 12.05©), a claimant must demonstrate an IQ in the appropriate range which was manifested in the developmental period as well as another mental or physical impairment.

In the present action, Intelligence testing administered by Psychologist Robert Fitz produced a verbal IQ score of 70, a score within Listing range.  (Tr. 327).  While the examiner opined that Lewis was somewhat careless in his test-

taking, he did not malinger.  (Tr. 327).  Thus, this score arguably meets the Listing.[2]

However, the claimant has not satisfied the other portion of the Listing requiring him

to demonstrate the existence of an additional mental or physical impairment

imposing significant work-related restrictions.  Fitz diagnosed only borderline

intelligence.  (Tr. 328).  Treatment records from the staff at Mary Breckinridge

Healthcare do not reveal the existence of a "severe" physical impairment.  (Tr. 349-

457).  In December of 2002 he was described by a nurse-practitioner as a healthy

teenager whose laboratory testing results were all normal.  (Tr. 365).  A June, 2005

chest x-ray revealed no active cardiopulmonary disease.  (Tr. 354).  An EKG at this

time was borderline normal.  (Tr. 357).  An x-ray of the cervical spine was also a

normal study.  (Tr. 353).  Furthermore, the plaintiff has not argued that the ALJ

erred in failing to find that he met the requirements of this Listing.  Therefore, the

ALJ properly concluded that the Listing was not met.

The record does reveal the existence of modest mental limitations.  Fitz rated

Lewis' Global Assessment of Functioning (GAF) at 65.  (Tr. 328).  Such a GAF

suggests the existence of only mild psychological symptoms according to the

American Psychiatric Association's Diagnostic and Statistical Manual of Mental

Disorders (4th Ed.-Revised 1994).  The examiner opined that the claimant would

---

[2]The intelligence testing also revealed a Performance IQ score of 77 and a Full Scale IQ score of 71, both outside the Listing range.  (Tr. 327).  However, the regulations provided that where more than one IQ is derived from the administered test, the lowest score is used in conjunction with the listing 12.05.  20 C.F.R. Section 12.00D.

have a "fair" ability in such areas as understanding, remembering and following instructions and tolerating stress or work pressures. (Tr. 329). The term "fair" was not defined. Thus, these would not appear to be totally disabling mental limitations.

Psychologist Laura Cutler reviewed the record and indicated the existence of "moderate" mental limitations in such areas as understanding, remembering and carrying out detailed instructions, performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances, interacting appropriately with the general public, responding appropriately to changes in the work setting, and traveling in unfamiliar places and using public transportation. (Tr. 344-345). These would also not appear to be totally disabling mental limitations.

Cutler's mental restrictions are non-exertional limitations which would normally mandate the testimony of a vocational expert. However, despite the presence of these mental restrictions, the ALJ properly relied upon Rule 204.00 of the Listing impairments to find that a significant number of jobs would remain available to Lewis. Social Security Ruling 85-15 states when a claimant's only impairment is mental but not of Listing severity, then it would not be considered totally disabling unless there was a "substantial" loss of ability to understand, remember, and carry out simple instructions; respond appropriately to supervision, co-workers or usual work situations; or to deal with changes in a routine work setting. The aforementioned mental limitations do not rise to this level of severity.

06-349  Lewis

Furthermore, the plaintiff has not raised this issue on appeal.  Therefore, the ALJ could reasonably rely upon Rule 204.00 and not call for the testimony of a vocational expert.

Lewis argues that the ALJ erred by failing to cite specific rationale for rejecting the credibility of his testimony.  However, review of the administrative denial decision reveals a number of reasons to support the ALJ's finding on this issue.  The ALJ noted that the plaintiff participated in a number of activities including hunting, attending church, Bible study, playing music, and riding a four-wheeler. (Tr. 17-18).  He was able to care for his own grooming and hygiene, make purchases and visit with friends. (Tr. 18).  The medical record revealed that he had only been treated for minor ailments such as colds. (Tr. 18).  The mental health professionals did not indicate disabling mental restrictions.  (Tr. 19).  Therefore, the ALJ's credibility assessment was well-supported.

The undersigned concludes that the administrative decision should be affirmed.  Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 13th day of June, 2007.



**Signed By:**

_G. Wix Unthank_

**United States Senior Judge**

11